HON. JOHN C. COUGHENOUR

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR18-090-JCC |
| Plaintiff, | ) |
| v. | ) DEFENDANT'S RESTITUTION |
| | ) MEMORANDUM |
| THOMAS MAHONEY, | ) |
| | ) **[FILED UNDER SEAL—related to** |
| Defendant. | ) **Doc. No. 44]** |

Thomas Mahoney, through counsel, submits this restitution memorandum in support of $3,285 in restitution.  Specifically, the defense agrees that the following costs are covered under the Mandatory Victims Restitution Act, 18 U.S.C. §3663A and §3664 ("the MVRA"):

1)  Nancy Joyce counseling:       $2,210.00

2)  East Bay Behavioral:          $400.00

3)  Diablo Behavioral:            $675.00

## I.       BACKGROUND

Thomas Mahoney was convicted of the following crimes: 1) Three counts of Travel with Intent to Engage in a Sexual Act with a Minor in violation of 18 U.S.C. §2434(b); and 2) one count of Enticement of a Minor in violation of 18 U.S.C. §2422(b).  On January 8th, 2019, this court sentenced Mr. Mahoney to 120 months of imprisonment with restitution to be determined later.  Doc. No. 40.

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

A. *The offense conduct*

The offense conduct summarized in the pre-sentence, consistent with Mr. Mahoney's plea agreement, set forth the following material facts for sentencing:

- Mr. Mahoney met MV (minor victim) via Facebook.  When MV was 14 years old, through age 15, both MV and Mr. Mahoney engaged in sexual intercourse together.  Additionally, the two exchanged approximately 99 files through Facebook involving sexually explicit communications.

- The sexually explicit computer files contained nude and partially nude images of MV, images of MV masturbating, and images of MV and Mr. Mahoney engaged in sexual intercourse.  Some of these files were created by Mr. Mahoney using his cell phone camera.

- According to MV's interview with law enforcement, she had spent three days at Mr. Mahoney's residence in Washington state where Mr. Mahoney supplied her with alcohol.  The two also had sexual intercourse during this time.

- From ages 14 through 15, MV moved to California.  However, both MV and Mr. Mahoney continued to communicate.  On three occasions, Mr. Mahoney traveled to California to meet MV where the two engaged in sexual intercourse.   According to MV's interview with law enforcement, Mr. Mahoney offered her marijuana and then had sexual intercourse.  MV stated that Mr. Mahoney also produced a video of the sexual intercourse.

- Sometime in October of 2016, MV accompanied her mother on a trip to the Seattle area.  During this trip, MV met up with Mr. Mahoney and they again had sexual intercourse.  She told law enforcement that Mr. Mahoney was mean to her, and did not act as though he cared for her.  She also learned that

DEFENDANT'S RESTITUTION MEMORANDUM   - 2
*USA v. Mahoney* / CR18-090-JCC

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1  she was pregnant.  The pregnancy was terminated using the services of a free
2  clinic.

3  ■  On October 30, 2017, law enforcement received a cyber-tip about the
4     Facebook communications.  And on October 31, 2017, Mr. Mahoney was
5     arrested and has been in custody ever since.

6  According to Probation's presentence report, within the "Victim Impact Section"
7  of the report, it notes that "child victims, like the victim in this case, are not only
8  sexually abused, but they are often emotionally and physically abused in order to coerce
9  or force their participation in the production of these images and videos."

10  At Mr. Mahoney's sentencing, MV spoke about the emotional impact of the
11  crime, including her counseling sessions to help deal with anxiety, depression, bi-polar
12  disorder, and obsessive compulsive disorder.  MV's mother also spoke about the costs
13  associated with the crime and the impact on MV.  In addition, the mother supplied
14  records for the court to consider for purposes of supporting her restitution claim of
15  $72,503.39.  Doc. 44 (filed under seal).  We respectfully dispute the claimed amount
16  and instead assert that the correct restitution amount is $3,285.

17  II.    ACCOUNTING OF THE RESTITUTION FIGURE

18     A. *Legal Authority*

19  The government bears the burden of proving restitution by a preponderance of
20  the evidence.  *United States v. Thompsen*, 830 F.3d 1049, 1067 (9th Cir. 2016).
21  Specifically, the government must prove the amount of loss and proximate causation
22  from the defendant's criminal conduct.  *United States v. Eyraud*, 809 F.3d 462, 467 (9th
23  Cir. 2015); *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011) (restitution
24  "awarded only for losses for which the defendant's conduct was an actual and
25  proximate cause.").  "But for" causation is insufficient.  *Kennedy*, at 1261.  Moreover,

26

DEFENDANT'S RESTITUTION MEMORANDUM   - 3
*USA v. Mahoney* / CR18-090-JCC

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    any intervening cause must be "directly related to the defendant's conduct." *United*

2    *States v. Swor*, 728 F.3d 971, 974 (9ᵗʰ Cir. 2013).

3           In *Swor,* the defendant challenged part of a $747,345 restitution order arguing

4    that the district court erred in applying a "but for" causation test for restitution.  In other

5    words, the district court ordered the defendant to pay full restitution for all losses on the

6    grounds that "but for" the defendant's conduct, the total losses exceeding $700,000

7    would never have happened.  The defendant argued that if the court instead applied an

8    actual causation test, the restitution amount would have been reduced by $166,887.09—

9    thereby distinguishing the economic loss (resulting from the overall crime) from the

10   restitution owed to victims for losses directly related to the defendant's offense conduct.

11   *Id.* at 973-974.  The Ninth Circuit determined it was an abuse of discretion to apply the

12   "but for" causation test rather than the actual causation test for determining the

13   defendant's restitution responsibility.  *Id.* at 974-975.

14          B.  *MV's accounting (Doc. No. 44)*

15          The factual details and explanation supporting MV's accounting is set forth in

16   the letter dated January 16, 2019, prepared by MV's mother.  Doc. No. 44.  The

17   mother's letter is divided into 5 sections: 1) Bills from 11/25/2017; 2) Bills from

18   1/17/2018; 3) Bills from 3/13/2018; 4) Counseling; and 5) Additional bills not included.

19          The bills associated with 11/25/2017, 1/17/2018, 3/13/2018 fail to establish a

20   sufficient nexus between Mr. Mahoney's crime and the harm caused to MV.  In other

21   words, Mr. Mahoney's crime was not the direct and proximate cause of the accounted

22   costs relating to these three dates.  Accordingly, the supportive explanation for these

23   three events comports more with a "but for" argument, rather than an actual causation

24   analysis, and therefore does not determine the true restitution costs.

25   //

26   //

DEFENDANT'S RESTITUTION MEMORANDUM    - 4
*USA v. Mahoney* / CR18-090-JCC

1   1)  Bills associated with 11/25/2017

2        The costs associated with this section relate to an apparent suicide attempt  and

3   the expenses connected with MV's hospitalization.  The letter indicates that MV's

4   mother knew that MV was a suicide risk and contacted law enforcement after learning

5   that MV left the house with a bottle of benzodiazapienes that had been prescribed for

6   MV.  Law enforcement found MV 30 miles from home passed out from an overdose of

7   benzodiazapienes in San Francisco.  An ambulance then took MV to Zuckerburg SF

8   General Hospital.  MV's mother states that the bills associated with this hospitalization

9   exceed $19,000.

10        The defense respectfully submits that the government has failed to establish by a

11   preponderance of the evidence that Mr. Mahoney's crime was the direct and proximate

12   cause of this apparent suicide attempt.  There have been no statements presented by MV

13   or adopted by MV indicated that she attempted suicide because of Mr. Mahoney's

14   crimes.  Instead, MV's mother opines that Mr. Mahoney's crimes drove MV to attempt

15   suicide—and that is insufficient to support a restitution award for the hospitalization

16   costs.

17   2)  Bills from 1/17/2018

18        The victim's mother attributes approximately $2,069.13 in costs stemming from

19   MV breaking some of the windows in the family's home.  According to MV's mother,

20   MV did this in order to go to jail to make sure that jail was a bad enough place for Mr.

21   Mahoney.  Later, law enforcement tried to set up a jail tour for MV but that did not

22   work out.  MV's mother states that this event was deemed a PTSD-related outburst "by

23   her therapist and emergency providers."  The costs for the ambulance service and the

24   psychiatric hold amounted to $2,069.13.

25        The correct way to sufficiently prove, by a preponderance of the evidence, that

26   this episode was a "PTSD-related outburst" would be to provide a declaration or other

DEFENDANT'S RESTITUTION MEMORANDUM   - 5
*USA v. Mahoney* / CR18-090-JCC

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

report from the "therapist and emergency providers" that MV's outburst was caused by PTSD associated with Mr. Mahoney's crime.   Alternatively, a declaration from MV stating that the outburst occurred because of PTSD originating from Mr. Mahoney's crime might suffice.  However, we have neither for our record and therefore this $2,069.13 claimed amount should not be added to the restitution figure.

       3)  Bills from 03/13/2018

       MV's mother claims that following a March 12, 2018, therapy session, MV went into another PTSD rage where MV assaulted her mother.  According to the mother's letter, "providers described this event similar to the violent episodes soldiers suffering from PTSD sometime experience, targeting family members when triggered about trauma."  However, there is no support from the "providers" that PTSD associated with Mr. Mahoney's crimes caused MV to assault her mother, followed by inpatient hospitalization.  Nor do we have any direct statements from MV supporting this conclusion that Mr. Mahoney's crimes caused her to assault her mother.  As such, these costs should be excluded from the restitution amount.

       4)  Additional bills not included

       Additional bills not included, as summarized in the January 16, 2019, letter, should be excluded from the restitution amount.  The government bears the burden of proof and must establish a proper foundation for records and other documents in order to support a claimed restitution figure.  Failure to do so will not satisfy the government's burden of proof.

       Finally, MV's mother is claiming that Mr. Mahoney borrowed $5000 from MV and has yet to pay that amount back.  Regardless of whether Mr. Mahoney paid the money back, this $5000 figure is not related to any material element of Mr. Mahoney's crime and therefore cannot be included in the restitution figure.  See *Paroline v. United*

DEFENDANT'S RESTITUTION MEMORANDUM   - 6
*USA v. Mahoney* / CR18-090-JCC

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

*States*, 134 S. Ct. 1710 (2014) (The harm must have been "directly and proximately" caused by an element of the offense of conviction).

      C. *The Defendant's accounting*.

      Certainly, MV's counseling and therapy related to the defendant's crime must be included in the restitution figure as required by law.  To date, MV's mother has submitted records for PTSD counseling starting on January 8, 2018, through July 2, 2018 (Nancy Joyce counseling), totaling $2,210.  Additionally, MV's mother produced a bill for an evaluation at East Bay Behavioral Center on October 31, 2018, in the amount of $400.  Finally, MV's mother submitted billings for two additional therapy sessions on December 17, 2018, and December 26, 2018 in the amounts of $225 and $450 respectively.   Thus, the total amount for counseling and therapy costs thus far amounts to $3,285.

      One objection we have with the restitution claim is that it seeks $30,600 for "ongoing" therapy assuming "45 therapy sessions/yr for 4 yrs at average $170/session." In other words, it appears that the $72,503.39 restitution figure seeks restitution for services that have not happened and therefore do not exist.

      The MVRA requires that the party claiming restitution must have suffered one of the harms specified in 18 U.S.C. §3663A(b).  Relevant to MV's case, that harm would be the following:

> (2) in the case of an offense resulting in bodily injury to a victim—(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment.

This law is similar to 18 U.S.C. §2259 mandating restitution for victims of sexual exploitation of children—"'full amount of the victim's losses' includes any costs

DEFENDANT'S RESTITUTION MEMORANDUM   - 7
*USA v. Mahoney* / CR18-090-JCC

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1   incurred by the victim for . . . medical services relating to physical, psychiatric, or

2   psychological care." *Id.* at §2259(b)(3)(A).

3         The remedy for seeking losses not yet ascertainable is set forth under 18 U.S.C.

4   §3664(d)(5), giving the victim the right to petition the court for revision of the

5   restitution order.  To award restitution for services that have not occurred, and may

6   never occur, is the functional equivalent of awarding costs for pain and suffering—

7   which is prohibited.  Specifically, the principal limitation on the type of harm that can

8   be the basis for restitution is that a court may not award restitution for mental anguish,

9   pain and suffering.  *United States v. Hicks*, 997 F.2d 594 (9th Cir. 1993).  At this point,

10   hypothetical future counseling sessions are not ascertainable and therefore cannot factor

11   into the restitution figure.

12         Accordingly, the total restitution accounting is as follows:

13   1)  Nancy Joyce Counseling:   $2,210

14   2)  East Bay Behavioral:       $400

15   3)  Diablo Behavioral:         $675

16                                 _____

17              TOTAL:    $3,285.

18

19   DATED this 27th day of February, 2019.

20

21                        Respectfully submitted,

22                        s/ *Jesse Cantor*
                          Assistant Federal Public Defender
23                        Attorney for Thomas Mahoney

24

25

26

DEFENDANT'S RESTITUTION MEMORANDUM   - 8
*USA v. Mahoney* / CR18-090-JCC

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I certify that on February 27, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of filing to all registered parties.

s/ *Alma R Coria*
Senior Legal Assistant
Office of the Federal Public Defender

DEFENDANT'S RESTITUTION MEMORANDUM   - 9
*USA v. Mahoney* / CR18-090-JCC

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**