THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

THOMAS MAHONEY,

        Defendant.

CASE NO. CR18-0090-JCC

ORDER

This matter comes before the Court on the Government's motion for restitution (Dkt. No. 42) and motions to seal (Dkt. Nos. 43, 50, 52), and Defendant's motion to seal (Dkt. No. 48). Having thoroughly considered the parties' briefing, reviewed the relevant record, and heard oral argument, the Court hereby ORDERS restitution in the amount of $68,460.71, GRANTS in part and DENIES in part the Government's motions to seal (Dkt. Nos. 43, 50, 52), and DENIES Defendant's motion to seal (Dkt. No. 48) for the reasons explained herein.

**I.    BACKGROUND**

On September 17, 2018, Defendant Thomas Mahoney pled guilty as charged to three counts of travel with intent to engage in a sexual act with a minor and one count of enticement of a minor. (Dkt. No. 25.) On January 8, 2019, the Court sentenced Defendant to 120 months of imprisonment to be followed by 10 years of supervised release. (Dkt. No. 41.) At sentencing, the Court directed the Government to file a motion for restitution within 30 days. (*Id.*) On February

15, 2019, the Government filed a motion for restitution, seeking $72,503.39 for the minor victim ("MV"). (Dkt. No. 42.) Defendant objects to the Government's motion, and asks the Court to order only $3,285 in restitution. (Dkt. No. 49.)

The following background facts are relevant to the Court's restitution determination, and are drawn from the Complaint, Defendant's plea agreement, the presentence investigation report, and testimony presented at sentencing. (*See* Dkt. Nos. 1, 25, 31, 39, 51-3.) Using Facebook, Defendant befriended MV when she was 13. (Dkt. No. 25 at 6.) In July 2016, Defendant had sexual intercourse with MV—he was 23 while she was only 14. (*Id*.) From then until October 2017, Defendant repeatedly met with MV to have sexual intercourse. (*Id*.) Throughout this time, Defendant created videos and images in which he used MV to engage in sexually explicit conduct, such as vaginal and oral intercourse. (*Id*.)

In September 2016, MV moved from Washington to California. (*Id*.) Over the following year, Defendant visited MV in California several times for the purpose of engaging in sexual intercourse. (*Id*. at 7.) During one of those trips, Defendant videoed himself having sexual intercourse with MV and acknowledging that she was only 14. (*Id*.) During their encounters, Defendant provided MV with marijuana and alcohol. (Dkt. No. 31 at 4.) MV became pregnant in late 2016, but decided to terminate the pregnancy after consulting with Defendant. (*Id*.)

On October 30, 2017, the Contra Costa County District Attorney's Office received a Cyber Report from the National Center for Missing and Exploited Children advising of several sexually explicit messages and images exchanged between Defendant, who was then 24, and MV, who was then 15, via Facebook. (*Id*. at 3.) The 99 files included sexually explicit communications, nude and partially nude images of MV, images of MV masturbating, and images of Defendant and MV engaged in sexual intercourse. (*Id*.)

Both MV and her mother testified at Defendant's sentencing hearing. (*See* Dkt. Nos. 39, 53-1.) They described the physical, psychological, and emotional trauma that Defendant's conduct caused MV. (*See generally* Dkt. No. 53-1.) They additionally detailed the substantial

financial costs that they have incurred as a result of Defendant's crimes. (*Id.*) Since Defendant was arrested in October 2017, MV has undergone several medical evaluations and received significant counseling and therapy to address Defendant's abuse. (*See* Dkt. No. 44 at 2–5.) MV has also been hospitalized on multiple occasions due to violent outbursts that she believes are a product of Defendant's crimes. (*Id.*) MV also stated that she loaned Defendant approximately $5,000 during the offense period, none of which he has paid back. (Dkt. Nos. 44 at 5, 53-1.)

## II. DISCUSSION

### A. Legal Standard

Pursuant to 18 U.S.C. § 2429, district courts "shall order restitution" for certain specified sex offenses, including travel with intent to engage in a sexual act with a minor, and enticement of a minor. *See* 18 U.S.C. §§ 2422(b), 2423(b), 2429. The restitution order "shall direct the defendant to pay the victim . . . the full amount of the victim's losses." 18 U.S.C. § 2429(b)(1). The "full amount of the victim's losses" is defined as "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim," including:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) reasonable attorneys' fees, as well as other costs incurred; and

(F) any other relevant losses incurred by the victim.

18 U.S.C. § 2259(c)(2).[1] Restitution "may be awarded only for losses for which the defendant's conduct was an actual and proximate cause." *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011) (citation and internal quotation marks omitted). The Government bears the burden of

---

[1] "As used in this subsection, the term 'full amount of the victim's losses' has the same meaning as provided in section 2259[(c)(2)]." 18 U.S.C. § 2429(b)(3).

proving by a preponderance of the evidence that a victim's loss was caused by the Defendant's offense conduct. *United States v. Peterson*, 538 F.3d 1064, 1074–75 (9th Cir. 2008). The Federal Rules of Evidence do not apply to restitution hearings. *United States v. Yeung*, 672 F.3d 594, 606 (9th Cir. 2012) (citing *United States v. Littlesun*, 444 F.3d 1196, 1199 (9th Cir. 2006)).

**B.     Government's Motion for Restitution**

The Government's restitution request can be divided into three broad categories: (1) MV's past and future medical services including evaluations, counseling, and therapy; (2) medical services related to MV's past hospitalizations; and (3) money loaned to Defendant by MV during the offense period. (*See* Dkt. No. 44 at 42–43.) The Court discusses each in turn.

1. Evaluations, Counseling, and Therapy

The Government seeks restitution for MV's past and future costs for medical evaluations, counseling, and therapy related to Defendant's crimes. (Dkt. No. 42.) Since Defendant was arrested, MV has regularly received counseling from Nancy Joyce to address her post traumatic stress disorder at a cost of $170 per session. (Dkt. No. 44 at 7–11.) Ms. Joyce has estimated that MV will require an additional 4 years of therapy with 45 sessions per year, at a total cost of $30,600. (*Id*. at 12.) MV also obtained a counseling evaluation at East Bay Behavioral Center, as well as behavioral therapy from Diablo Behavioral Center.[2] (*Id*. at 44.)

Defendant agrees that MV is entitled to restitution for her "counseling and therapy" related to his crime. (Dkt. No. 49 at 7.) However, Defendant argues that MV should only receive restitution for the medical services already provided, and not for "ongoing therapy," that she will receive in the future. (*Id*.) Defendant suggests that federal law requires victims such as MV to seek an amended restitution order once they have incurred future therapy costs. (*Id*. at 8.) Defendant's position is not supported by the law.

The restitution statute entitles victims to "any costs incurred, or that are reasonably projected to be incurred in the future . . . as a proximate result of the offenses involving the

---

[2] MV's mother has provided documentation of these expenses. (*See* Dkt. No. 43.)

victim." 18 U.S.C. § 2259(c)(2). The Ninth Circuit has held that in cases of sexual abuse, future counseling expenses can be included in an order of restitution. *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999) ("Congress intended to allow district courts to include future counseling expenses in the amount of restitution under section 2259 . . . in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse.") Here, the Government has provided an estimate of MV's future therapy costs from her current therapist, who has been treating her for over a year. (Dkt. No. 44 at 12.) Therefore, the Government has proved by a preponderance of the evidence that MV is entitled to restitution for her past and future medical evaluations, counseling, and therapy in the amount of $33,950.

### 2. Hospitalizations

The Government seeks restitution for various medical bills related to MV's hospitalization on three separate occasions in 2017 and 2018. (Dkt. No. 44 at 42.) In late November 2017, MV was hospitalized after she attempted to commit suicide by ingesting prescription medications. (*Id.* at 2.) MV's mother stated that medical personnel determined that the incident was "related to [MV's] trauma and the abuse suffered by [Defendant]." (*Id.*) In January 2018, MV broke out all of the widows on the first floor of her house, apparently because "she wanted to be sent to jail to make sure it was a bad enough place for [Defendant]." (*Id.*) This incident resulted in MV's hospitalization and a psychiatric evaluation. (*Id.* at 3.) Finally, in March 2018, MV was again hospitalized after she "suffered a PTSD rage episode and assaulted her mother." (*Id.*) The Government seeks reimbursement for the costs of the ambulance service and hospitalization for each of these episodes.

The Ninth Circuit has consistently held that the Government must show "not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *See United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013). That causation standard is easily met in each of the incidents for which MV seeks restitution.

Each of MV's hospitalizations were temporally related to Defendant's offense conduct, and happened within months of Defendant being arrested. They were also factually related, as each incident was a foreseeable byproduct of Defendant's sexual abuse. It is not at all surprising to the Court that a young minor victim like MV would respond to a pattern of sexual abuse by attempting to commit suicide and lashing out in destructive ways. Indeed, MV's actions in each instance—consumption of prescription pills, breaking windows, and assaulting her mother— were directly and causally related to Defendant's crimes. There is also evidence in the record that suggests medical providers concluded that each incident was a manifestation of MV's post traumatic stress disorder, which directly resulted from Defendant's crimes. Therefore, the costs MV and her mother incurred from these hospitalizations were proximately caused by Defendant's conduct. Therefore, the Government has proved by a preponderance of the evidence that MV is entitled to restitution for the costs related to her hospitalizations in 2017 and 2018, in the amount of $29,510.71.

### 3. Money Provided to Defendant

The Government seeks restitution for $5,000 MV loaned to Defendant during the period when he was sexually abusing her. At the sentencing hearing, MV testified that she had loaned the money to Defendant because of the mental and emotional abuse he was exerting on her. (Dkt. No. 53-1.) MV has provided pictures of her PayPal account from 2016, which show thousands of dollars in transfers to a bank account with U.S. Bank. (Dkt. No. 44 at 34–40.) MV also provided an image of a text message purportedly sent by Defendant in which he acknowledges owing her "5k" and states that he will pay her back "real soon." (*Id*.)

Defendant argues that "[r]egardless of whether [he] paid the money back, this $5000 figure is not related to any material element of [his] crime and therefore cannot be included in the restitution figure." (Dkt. No. 49 at 6.) The Court disagrees. The restitution statute entitles victims to recoup "lost income" and "any other relevant losses incurred." 18 U.S.C. § 2259(c)(2). Here, the money MV loaned Defendant is both directly and proximately related to his crimes of

1 conviction. Defendant's crimes involve the abuse of a minor, and MV loaned Defendant the
2 money during the time he was sexually abusing her—a time when she was especially vulnerable
3 and susceptible to Defendant's requests for money. Furthermore, MV's loans helped enable
4 Defendant to continue perpetrating crimes against her. The Court concludes that MV loaned
5 Defendant $5000 as a direct and proximate result of his abuse.

Therefore, the Government has proved by a preponderance of the evidence that MV is entitled to restitution for the unpaid loan she made to Defendant in the amount of $5,000.

### C. Parties' Motions to Seal

The Government moves to seal its restitution memorandum (Dkt. No. 50), the documents filed in support of its memorandum (Dkt. No. 43), and a transcript of the sentencing hearing (Dkt. No. 53-1), while Defendant moves to seal its restitution memorandum. (Dkt. No. 48.) "There is a strong presumption of public access to the court's files." W.D. Wash. Local Civ. R. 5(g)(3); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). However, a particularized showing of good cause will suffice to maintain under seal documents that are attached to a non-dispositive motion. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2006). This rule provides an exception to the "strong presumption in favor of [public] access" to judicial records. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz*, 331 F.3d at 1135).

The Government has made a particularized showing of good cause to maintain the documents filed in support of restitution (Dkt. No. 44) under seal. The documents submitted include medical bills, collection notices, and other correspondence containing sensitive personal information regarding MV and her family. (*See generally* Dkt. No. 44.) In addition, much of the information contained in these documents has not made been made public through the prosecution of this case. Therefore, the Government's motion to seal (Dkt. No. 43) is GRANTED. However, the Government's motion to seal its restitution memorandum (Dkt. No. 50) is DENIED because the memorandum does not contain any information that has not already

been made public in the Complaint, Defendant's plea agreement, and the sentencing hearing. Additionally, the Government's motion to seal a transcript of the sentencing hearing is DENIED because that hearing was public.

Similarly, Defendant has not demonstrated particularized good cause to maintain his restitution memorandum under seal. Defendant states that the memorandum should remain sealed "based on the sensitive and confidential nature of information contained in the document, which if made public could result in irreparable harm to the defendant." (Dkt. No. 48.) Defendant's sentencing memorandum does not contain any information that has not already been made public during the prosecution of this case, whether through the indictment, plea agreement, or testimony elicited during the sentencing hearing. Therefore, Defendant's motion to seal (Dkt. No. 48) is DENIED.

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS restitution in the amount of $68,460.71. The Government's motions to seal (Dkt. Nos. 43, 50, 52) are GRANTED in part and DENIED in part, and Defendant's motion to seal (Dkt. No. 48) is DENIED. The Clerk is DIRECTED to maintain Docket Number 44 under seal until further order of the Court. The Clerk is further DIRECTED to unseal Docket Numbers 49, 51, 53, and 53-1. Within five days of the issuance of this order, the Government is ORDERED to submit an amended judgment and sentence that reflects the restitution award.

DATED this 5th day of March 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE