The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

              Plaintiff

    v.

THOMAS MAHONEY,

              Defendant.

NO.  18-CR-090-JCC

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

## I.     INTRODUCTION

The United States of America, by Brian T. Moran, United States Attorney for the Western District of Washington and Cecelia Gregson, Assistant United States Attorney for said district, files this memorandum in response to Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1).  Mahoney seeks a reduction in his sentence to time served and an immediate release from custody or, in the alternative, placement in a residential re-entry center or half-way house, arguing that his release is justified because hypertension, morbid obesity, pre-diabetes, and historical chemotherapy exposure place him at risk of significant consequences should he contract COVID-19.  Dkt. 62 at 2-3. Such risk factors, however, do not justify a reduction in his sentence given the continued danger that he is likely to present if released at this time.

1    Mahoney has served just thirty-one months of the one-hundred-twenty-month

2    prison sentence this Court imposed for Mahoney's repeated sexual abuse and sexual

3    exploitation a minor victim.  Although he may have medical condition recognized by the

4    Centers of Disease Control and Prevention as elevating his risk of more severe

5    consequences should he be unfortunate enough to contract the disease, his criminal conduct

6    and the danger that he presents to an individual and the community more than outweighs

7    that fact.  Mahoney's crimes were very serious, severely impacted his child victim, and

8    established his dangerousness to minors in the community.[1]  For that reason and those

9    detailed below, this Court should deny Mahoney's motion.

10                      **II.    FACTUAL BACKGROUND**

11   **A.    Mahoney's Conviction, Sentence and Criminal History.**

12         On March 28, 2018, Mahoney was arrested pursuant to a warrant based on

13   complaint charging him with three counts of Travel with Intent to Engage in a Sexual Act

14   with a Minor, in violation of 18 U.S.C. § 2423(b) and one count of Production of Child

15   Pornography in violation of 18 U.S.C. § 2251(a), (e). Dkt. 1.  The conduct leading to these

16   charges began when Mahoney, who was twenty-three years old, met his then thirteen-year-

17   old victim after she received his "friend request" via Facebook.  Dkt. 25 at 6. The two

18   began communicating electronically and met in person shortly thereafter.  A week after her

19   fourteenth birthday, Mahoney sexually assaulted the victim at his Bellevue, Washington,

20   residence.  *Id.*  The defendant repeatedly sexually assaulted and exploited the victim in

21   both Washington and California and created videos and images which were distributed via

22   Facebook between Mahoney and the victim.  *Id.*  To gain compliance, Mahoney plied his

23   victim with alcohol and marijuana. Dkt. 35 at 2-3.  Mahoney referred to the victim as his

24

25

26

27   _____

     [1] The minor victim and her mother spoke at length sentencing detailing the incredibly detrimental impact that
28   Mahoney's crimes had on their well-being.

1  "sex slave," impregnated her, and callously placed his sexual needs above the victims'

2  well-being in every conceivable way. *Id*., PSR at 4.[2]

3      On September 17, 2018, Mahoney plead guilty to three counts of Travel with Intent

4  to Engage in a Sexual Act with a Minor, in violation of 18 U.S.C. § 2423(b), and one count

5  of Enticement of a Minor, in violation of 18 U.S.C. § 2422(b) and 18 U.S.C. § 2427. Dkt.

6  21, 25. As a part of the plea agreement, the parties agreed to recommend that Mahoney be

7  sentenced to the ten-year mandatory minimum term of imprisonment applicable to the

8  enticement charge. Dkt. 25 at 8.

9      At the sentencing hearing, the defense focused on Mahoney's relative youthfulness

10  at the time of the offenses as a mitigating circumstances.[3] Dkt. 33 at 6-7. After hearing

11  from the victim, the victim's mother, and Mahoney, consistent with the parties'

12  recommendations, this Court sentenced Mahoney to serve 120 months in prison followed

13  by ten years of supervised release. Dkt. No. 57. This court also ordered $68,460.71 in

14  restitution based upon the extreme impact the defendant's crimes had upon the victim.

15  Dkt. 57.

16      The defendant is now twenty-seven-years-old. He is housed at the Federal

17  Correction Institution at Fort Dix, and has a projected release date of October 31, 2026.

18  Since his incarceration, he has been disciplined for assaulting another inmate. *See* Ex. 3

19  Mahoney Discipline Record.

20  **B.    Mahoney's Medical Condition.**

21      The presentence report documents that Mahoney suffered from high blood pressure

22  and fluid retention in his feet and had been prescribed Lisinopril, metoprolol, and

---

23

24  [2] To protect the victim from additional cyber-stalking activities arising from this case, the United States respectfully
25  requests that, in addition to this short summary, this Court consider the detailed facts contained in its sealed Sentencing
    Memorandum. The Victim Family Statement and Canadian Protection Center documentation demonstrate that cyber-
26  stalking behaviors still haunt the victim even though more than two years have passed since Mahoney was sentenced
    for his crimes. *See* Ex. 1, Ex. 2.

27  [3] Mahoney's only other contact with the criminal justice system was a charge in 2012 for possession of marijuana
28  with intent to distribute on school property and possession with intent to use drugs in Bergen County, New Jersey.
    After Mahoney completed a diversion program, the case was dismissed. PSR at 7.

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney*, CR18-090 JCC - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

amlodipine, to manage his high blood pressure and hydrochlorothiazide to combat fluid retention. PSR at 8, ¶ 54.  Mahoney was diagnosed with leukemia in 2014 and underwent chemotherapy in Ridgewood, New Jersey from November 2014 to February 2016. The presentence report reflects that by letter dated May 10, 2018, Mahoney's treating physician, Dr. James McCloskey, Interim Chief of Leukemia at the John Theurer Cancer Center in New Jersey, noted that Mahoney had a fifty percent chance of recurrence within five years, and monthly blood counts were recommended for a two-year period. PSR at 8, ¶ 55. Mahoney also had a reported history of depression, anxiety, bipolar disorder with psychotic episodes, and Attention Deficit Hyperactivity Disorder.  PSR at 8, ¶ 56. A psychosexual evaluation was conducted with Pacific Psychology Services on June 7, 2018. The defendant's risk of reoffending, according to the Static-99 risk assessment tool is in the "Average" range. PSR at 9, ¶ 59.

   In support of the defendant's motion for compassionate release, the defense obtained a declaration from Dr. McCloskey.  Dkt. 62, Ex. A. Dr. McCloskey confirmed the defendant remains in hematologic remission based on a March 2020 blood test. *Id.* at ¶ 5.  Dr. McCloskey further noted "long-term survivors of Leukemia **may** have **mild** persistent immune defects that could place Mr. Mahoney at increased risk for infections, including COVID-19." Id., ¶8 (emphasis added).  The defendant also provided medical records from the Bureau of Prisons documenting the defendant's status as morbidly obese with a Body Mass Index (BMI) of 59.5. Dkt. 62 at 2, Ex. B.  Of note, based on the medical records provided, Mahoney appears to have been inconsistent with taking prescribed medication. *See* Dkt. 62, Ex. B at 17, 20, 22, 25, 102, 105.

### III.    ARGUMENT

**A.    The Legal Standards for Compassionate Release**

   "'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010).  Consistent with that principle, Section 3582(c) provides that a court "may not modify a term of imprisonment

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

once it has been imposed," except under three specified circumstances, one of which is a motion under 18 U.S.C. § 3582(c)(1)(A).[4]  This statute provides a court with jurisdiction to reduce an otherwise final sentence where a defendant establishes: (1) the exhaustion requirements in the statute have been satisfied; (2) an extraordinary and compelling reason supports the motion; and (3) any reduction is consistent with the policy statement.

To guide the discretion that it provided to district courts in 3582(c)(1)(A), Congress enacted 28 U.S.C. § 994(f)[5] which directed the Sentencing Commission to draft the policy statement referenced in § 3582(c)(1)(A).  That policy statement, found at USSG § 1B1.13, provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--

---

[4] As relevant to the defendant's motion, the statute now reads:

(c)  The court may not modify a term of imprisonment once it has been imposed except that—
(1)  in any case--
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering
the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
  (i)        extraordinary and compelling reasons warrant such a reduction; or

* * *

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

[5] Title 28, United States Code, Section 924(t) states:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(1) (A) Extraordinary and compelling reasons warrant the reduction;

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

As directed by 28 U.S.C. § 924(t), the application notes then define what constitute "extraordinary and compelling reasons" to support a reduction in sentence. Specifically, application note 1 provides that extraordinary and compelling reasons exist under the following circumstances:

(A)     Medical Condition of the Defendant.—

(i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)     The defendant is—

(I)     suffering from a serious physical or medical condition,

(II)     suffering from a serious functional or cognitive impairment, or

(III)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney*, CR18-090 JCC - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

USSG § 1B1.13 cmt. n.1. The application notes also provide that extraordinary and compelling reasons may include certain described family circumstances, or other reasons as determined by the Director of the Bureau of Prisons.[6]   The notes acknowledges that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community."   USSG § 1B1.13 cmt. n.4.

1. **The Policy Statement's Description of "Extraordinary and Compelling Reasons" for a Sentencing Reduction is Binding.**

Based on the text of § 3582(c)(1)(A), the policy statement referenced in § 3582(c)(1), like that referenced in 18 U.S.C. § 3582(c)(2), *see* USSG § 1B1.10, is binding on this Court and controls how this Court is to exercise of discretion. *Cf. Dillon v. United States*, 560 U.S. 817, 827 (2010). In *Dillon*, the Court held that the identical "policy statement" language contained in 18 U.S.C. § 3582(c)(2) was binding on district courts and any limitations contained in that Guideline is a limitation a district court's discretion to reduce sentences. *See Dillon*, 560 U.S. at 826. Both subsections follow the same prefatory language of Section 3582(c) that states a court may only "modify a term of imprisonment once it has been imposed" under the limited circumstances set out in these two subsection. Given the parallel nature of the two statutory subsections, the policy statement referenced in 3582(c)(1)(A) and the guidance it provides regarding what constitutes an "extraordinary and compelling reason" is likewise controlling of the circumstances that warrant relief.

The fact that USSG § 1B1.13 has not been amended since enactment of the First Step Act does not change that fact. The Act did not change any of the statutory standards for relief, suggest that there should be a broader interpretation of what constitutes an

---

[6] *See* Program Statement 5050.50 available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf contains the standards use by the Bureau of Prison to determine extraordinary and compelling circumstances.

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    "extraordinary and compelling reason" beyond what is reflected in the policy statement, or

2    direct the Sentencing Commission to expand this policy statement. Rather, Congress

3    expanded the reach of this statute simply by permitting a defendant to file a motion rather

4    than retaining the Bureau of Prisons as the gatekeeper, nothing more. *See United States v.*

5    *Ebbers,* 432 F.Supp.3d 421, 427 (S.D.N.Y. Jan. 8, 2020).

6           Since the start of the COVID-19 pandemic numerous district judges have addressed

7    the question of whether USSG § 1B1.13 binds their decision making.  As a result there are

8    now myriad opinions on both sides of the issue.  Although the United States continues to

9    take the position that USSC § 1B1.13 is binding, rather than providing lists of dueling

10   citations, it suffices to say that regardless whether the Guideline is determined to be a

11   binding limitation, it provides guidance on what constitutes an extraordinary and

12   compelling reason to disturb the finality of a sentence.  *See, e.g., United States v. Wolfe,*

13   2020 WL 2615010 (S.D. In. May 22, 2020).

14          Thus, before this Court may reduce the defendant's sentence, applying the guidance

15   in USSG § 1B1.13, this court first must determine whether the reasons the defendant has

16   provided are extraordinary and compelling.  And, if the court concludes such a reason or

17   reasons have been provided, this Court must then consider whether a reduction in sentence

18   is appropriate in light of the factors in 18 U.S.C. § 3553(a) and the danger that the defendant

19   might continue to present to another person or the community.

20

21   **B.      Do Not Meet the Standard for a Reduction on Sentence.**

22           ***1.      The Exhaustion Requirement.***

23           A request to the warden was made on the defendant's behalf on May 19, 2020.

24   Thirty days have passed since a request was presented to the warden so this statutory

25   prerequisite has been met.

26           ***2.      Mahoney's Reasons for Release***

27           If the exhaustion requirement has been met, before this Court may consider whether

28   to exercise its discretion to reduce a sentence under § 3582(c)(1)(A), an "extraordinary and

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 8

compelling reason" supporting the request must be presented.  The defendant bears the burden of showing an "extraordinary and compelling reasons" that meet the high bar set by Congress and the Sentencing Commission for compassionate release to be granted.  *See Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020).; *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).  "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from.  In general, chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."  *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020); *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020).  This reluctance to view compassionate release too expansively is grounded in a concern that it could yield significant sentencing disparities.  *Ebbers*, 432 F.Supp.3d at 430 (S.D.N.Y. Jan. 8, 2020).  Compassionate release is not a tool to "correct" a judgment.  *Id.*

To meet this standard, Mahoney points to his high blood pressure, morbid obesity, historical chemotherapy exposure and the fact that he is now considered pre-diabetic and argues that this renders him particularly susceptible to severe illness from COVID-19 should he become infected.  Dkt. 62 at 2.  The United States looks to the risk factors identified by the U.S. Centers for Disease Control and Prevention (CDC) in assessing a defendant's risk.

The CDC has continued to update its guidance on the coronavirus, advising that certain populations are at heightened risk of severe complications and/or death if they contract COVID-19.[7] The most recent assessment, dated June 25, 2020, provides that

---

[7] *See* CDC Coronavirus Disease 2019-COVID, People who are at higher risk for severe illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last reviewed July 2, 2020) ("CDC Guidelines").

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

those at heightened risk include individuals over the age of 65 and those with certain chronic medical conditions, including chronic lung disease or moderate to severe asthma; serious heart conditions; liver disease; immunocompromised patients from solid organ transplants; severe obesity; diabetes; chronic kidney disease undergoing dialysis; and liver disease. Serious heart conditions include heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension.

Of the various medical issues that Mahoney points to, only morbid obesity qualifies as a condition for heightened exposure as defined by the CDC.  None of Mahoney's other listed conditions meet this standard.  Specifically, the CDC lists hypertension and pre-diabetes as medical conditions that "might be at an increased risk" for severe illness from COVID-19.[8]  Even Dr. McCloskey's speculation that the defendant "may" have "mild" immune deficiencies from leukemia does not rise to the CDC's increased risk category. *See* Dkt. 62, Ex. A, ¶8.  And the BOP medical records demonstrate the defendant has been provided medications to combat hypertension and pre-diabetes and testing to monitor reoccurring leukemia. Dkt. 62, Ex. A ¶ 5, Ex. B.

And while the United States now takes the position that having a heightened risk factor identified by the CDC constitutes an extraordinary and compelling reason permitting the Court to consider a reduction in sentence, as discussed in further detail below, that is not the end of the analysis.  Rather, that fact simply permits this Court to determine whether to exercise its discretion.

Here, although Mahoney's focus is on the difficulty to engage in social distancing and avoidance of exposure to the virus in a prison setting, Mahoney's history demonstrates that early release is unlike to lessen that risk.  As noted above, the BOP medical records

---

[8]     *See*     https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, last viewed July 1, 2020.  The CDC reports an unhealthy diet, physical inactivity, and obesity are factors that increase the risk for high blood pressure.  *See* https://www.cdc.gov/bloodpressure/risk_factors.htm, last viewed July 1, 2020.  The CDC also reports prediabetes can be prevented by getting regular physical activity and losing weight.  *See* https://www.cdc.gov/diabetes/basics/prediabetes.html, last viewed July 1, 2020.

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

suggest that he has failed to take prescribed medications consistently.  *See* Dkt. 62, Ex. B at 17, 20, 22, 25, 102, 105.  Mahoney also failed to practice basic self-care while residing in the community in the months leading up to arrest, let alone the sanitation standards COVID compliance requires.  While executing the search warrant on the defendant's home law enforcement observed, "a large significant amount of trash, *human wa[ste]*, and old discarded food littering the floors and rooms in the house thus creating a very pungent odor especially in the bathroom where someone had left their soiled tissue paper on the counter." *See* Ex. 4 Statement Form of Detective Nichols; *see also* Ex. 5 Search Warrant Photographs.

Further, the release plan that was proposed in his motion was rejected by the United States Probation Office as an appropriate living arrangement.  Therefore, if this Court were to determine that a reduction in sentence was appropriate here, Mahoney would be returned to Seattle to reside at a Residential Reentry Center.  While allowing for more social distancing that a prison facility, this is still a communal living situation.

### 3. *COVID-19 and the Bureau of Prisons.*

Moreover, despite Mahoney's arguments to the contrary, the Bureau of Prisons (BOP) has made significant efforts to mitigate risks from COVID-19, altering its procedures in response to the changing advice from public health officials.  To start, contrary to Mahoney's assertion, the BOP is acting to remove particularly vulnerable individuals from a variety of institutions to home confinement using its authorities under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541(g), plus Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136.  As of July 5, 2020, some 4,680 inmates have been transferred to home detention.[9]

And, throughout the pandemic, BOP has been actively attempting to protect the health of inmates and staff, adjusting continually to the changing guidance from health experts.  Consistent with the preexisting 2012 Pandemic Influenza Plan, BOP began

---

[9] *See* https://www.bop.gov/coronavirus/

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

planning for potential coronavirus transmissions in January 2020 in consultation with subject-matter experts at the CDC, and using guidance from the World Health Organization. On March 13, 2020, it implemented Phase Two of its plan which included many preventive and mitigation measures, including screening incoming inmates; regular screening of staff; liming contractor visits to essential services; suspending attorney, social, and volunteer visits; limiting inmate movements between facilities; and taking additional steps to modify operations to maximize social distancing such as staggering times for meals and recreation.[10]

Since then, the Bureau of Prisons has serially escalated its response. The Phase 3 plan was put into place on March 18, 2020, requiring that all cleaning, sanitation, and medical supplies be inventoried and stocked. This was followed by the Phase 4 and the Phase 5 plans, which instituted a nationwide lockdown on April 1, 2020, securing inmates to their assigned quarters for at least fourteen days to decrease the spread of the virus, and significantly decreasing inmate movement.[11] These requirements have now been extended in Phase 6 and 7.[12] And BOP has also significantly increased its testing.[13] The Director of BOP testified regarding these efforts before the Senate Judiciary Committee on June 2, 2020. A copy of the written statement presented to the committee is included as Exhibit 6 to this response. All of these measures reduce the risk to the defendant while incarcerated.

Ft. Dix also obtained the equipment to conduct rapid testing of inmates which has now been extensively utilized at the facility. *See* Declaration of Dr. Turner-Foster, Exhibit 7 at 12-13. As of July 5, 2020, a total of 210 inmates have been tested, an additional 41 inmates have tests pending, and 39 inmates tested positive of for the virus. Of these, 14

---

[10] *See* https://www.bop.gov/resources/news/20200313_covid-19.jsp

[11] *See* https://www.bop.gov/resources/news/20200331_COVID19_action_plan_5.jsp

[12] *See* https://www.bop.gov/resources/news/20200520_covid_19_phase_seven.jsp

[13] *See* https://www.bop.gov/resources/news/pdfs/20200507_press_release_expanding_rapid_testing.pdf and https://www.bop.gov/resources/news/20200424_expanded_testing.jsp

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   inmates at FCI Ft. Dix are still listed as positive for COVID-18, and 25 inmates are listed

2   as recovered.[14]  Inmates who do test positive are promptly isolated along with those who

3   might have been exposed.

4       ### 4.  The § 3553(a) Factors Don't Support the Defendant's Release and the
5           Defendant Has Failed to Establish He is No Longer a Danger.

6       Moreover, although this Court has the discretion to reduce Mahoney's sentence, the

7   application of the § 3553(a) factors and the facts of this case counsel against any exercise

8   of that discretion.  In short, contrary to his assertion, Mahoney remains to be a threat to

9   community safety.  This conclusion is further supported by the application of the factors

10  set out in § 3553(a), which have not altered since this defendant's original sentencing.

11  Mahoney's sexual interest, manipulation, and abuse of the then newly teenage victim

12  demonstrate the unique threat he poses to community safety.  Mahoney was nearly ten

13  years the victim's senior when he utilized technology to flatter and groom a newly teenage

14  child in order to sexually assault and exploit her.  One cannot imagine another period in a

15  human's life where a difference in age, experience, and judgment presents a greater divide

16  than that of a man in his twenties and a child in her early teens.  The mental, emotional,

17  and physical damage inflicted upon the victim by the defendant is immeasurable.

18      Now twenty-seven-years-old, Mahoney requests this court reduce his sentence by

19  over six years (and longer if he loses further good time credits through his institution

20  behavior).  Although his morbid obesity is a risk factor that allows this Court to exercise

21  its discretion, it is also a health condition over which a defendant has some measure of

22  control through diet and exercise.  More importantly, applying the factors in § 3553(a) to

23  this case, a reduction in sentence is not warranted.   Specifically, the policy statement

24  provides that a court may not reduce defendant's sentence unless it finds that "the

25  defendant is not a danger to the safety of any other person or to the community, as provided

26  in 18 U.S.C. § 3142(g)."  USSG § 1B1.13; *see also United States v. Gotti*, No. 02-cr-743-

27

28  _____

[14] *See* https://www.bop.gov/coronavirus/

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 13

CM, 2020 WL 497987 (SDNY 2020) (finding that even if medically eligible, release was inappropriate because defendant poses a continuing danger to the public). The record in this case precludes such a finding.

While Mahoney suggests that the conduct leading to his conviction will not be repeated, there is little in the record that provides assurance of that fact. He underwent a psychosexual examination and his risk of reoffending, according to the Static-99 risk assessment tool, was determined to be in the "Average" range. PSR at 9, ¶ 59. At this point in time, Mahoney remains an untreated hands on sex offender.

Moreover, as the government is required to do, the victim's family was notified of the defendant's early release request. The family is vehemently opposed to his early release. Attached under seal for the Court's consideration are letters and materials from the victim's family Ex. 1, the Canadian Centre for Child Protection Ex. 2, and Dr. Cooper Ex. 8, detailing the emotional impact the defendant's crimes continue to have upon the victim. In particular, the level of hateful online traffic focused on the victim is truly unparalleled.

Nothing about the COVID-19 pandemic reduces the defendant's danger to others. And it is clear that this danger to the community is acute because now the defendant has no release plan beyond an initial stay in a residential reentry center. Even if he had a release address, close supervision by Probation Officers upon his release is simply not a reality, when even the probation officer's most basic tools – such as home visits that would be required to establish the defendant was not accessing the internet – are severely restricted as a result of the COVID-19 pandemic. Indeed, placing the defendant on electronic home monitoring if the Probation Office were to do so would require him to possess a cell phone that would facilitate his return to his past criminal behavior. For this reasons, numerous courts have denied release to defendant's convicted of similar offenses.

> *United States v. Fischer*, 2020 WL 2769986 (D. Md. May 27, 2020) (defendant presents CDC risk factors, but relief is denied due to "heinous" offense involving interstate travel to abuse a vulnerable teenage girl)

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*United States v. Smith*, 2020 WL 1903160 (D. Conn. Apr. 17, 2020) (denied notwithstanding heart condition that puts him at greater risk of COVID-19, upon consideration of 3553(a) factors, including the nature of child sex offense)

*United States v. Sears*, 2020 WL 3250717 (D.D.C. June 16, 2020) (although an Elkton inmate who has been identified as at great risk, reduction in sentence was denied because he has only served 23 months of 71-month sentence for child exploitation offenses)

*United States v. Starr*, 2020 WL 2312045 (S.D. Iowa May 8, 2020) (declining to reduce 240-month sentence for manufacturing child pornography as the defendant committed the crime at home and in his neighborhood, and has no remorse)

*United States v. Stone*, 2019 U.S. Dist. LEXIS 182081, at *32 (S.D. Iowa Oct. 22, 2019) (based on danger to the community in child exploitation case)

*United States v. Hahn*, 2020 WL 980185 (D. Minn. Feb. 28, 2020) (compassionate release would not be appropriate in child abuse case given the nature of the conduct, the fact that release would undermine the 15-year mandatory sentence dictated by Congress, and in light of the defendant's conduct in prison)

*United States v. Schultz*, 2020 WL 2764193, at *7 (W.D.N.Y. May 28, 2020) (Although a vulnerable Elkton inmate, reduction denied because of "abhorrent" conduct in attempting to meet purported 15-year-old for sex)

*United States v. McCloud*, 2020 WL 3066618 (D.N.D. June 9, 2020) (notwithstanding significant ailments, relief is denied for 68-year-old man who has served 11.5 years of 20-year sentence for abusive sexual contact with a child)

*United States v. Sims*, 2020 WL 2838611, at *6 (W.D. Wash. June 1, 2020) ("In today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place Mr. Sims in home confinement and eliminate his ability to engage in his prior criminal conduct [trading in child pornography]. Further, the pandemic and the CDC's recommended guidelines would only serve to make it more difficult to monitor Mr. Sims's behavior. Because Ms. Sims could engage in his prior criminal conduct at any time from his place of home confinement, effectively monitoring him would require repeated visits to his home. Such visits would enhance the risk of the spread of COVID-19 to the individuals charged with monitoring his compliance. Based upon the foregoing analysis, the court finds that Mr. Sims would be a danger to the community if he were released.")

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Mahoney seeks to compare his case to that of Curtis Pippin where this Court concluded that a reduction in sentence was appropriate. *See United States v. Pippen*, 16-CR-266-JCC.  Aside from the differences in age, Pippin is 50, the record shows that Pippen also had completed two-thirds of his sentence, had a serious medical condition that was not within his power to control, and was housed at the Federal Correctional Complex at Lompoc where COVID-19 was spreading rapidly through the inmate population of the institution.  These factors are what distinguish his case from that of Pippin.

In short, application of the § 3553(a) factors and the danger that he presents provide amble reason to deny his motion.  In the current climate, irresponsible social habits can also endanger the health of the community.  In order to be effective, people must follow the rules and voluntarily comply.  Such rules, though enforceable by peace officers, rely largely on voluntary obedience.  A person who ignores such admonitions and rules could increase infection rates, leading to severe illness and death.

As a final matter, although the United States strenuously opposes release, if a reduction in sentence is granted, this statute does permit the court to extend the period of supervised release to reflect the unserved portion of the defendant's imprisonment sentence and impose conditions such as home confinement with electronic monitoring.  Further, if this Court determines the defendant should be released, for the protection of the community, the government asks this Court to direct that the defendant remain in quarantine for fourteen days prior to release or until testing can confirm that he negative for the virus.  Finally, even if that condition is not imposed, to ensure that the appropriate travel arrangements can be made and his release plans affirmed, we ask that the Court allow for up to 72 hours after entry of the order for his release.

//

//

//

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

IV.   **CONCLUSION**

For all of the above reasons, defendant's motion for compassionate release should be denied.

Dated this 6th day of July, 2020.

Respectfully submitted,

BRIAN T. MORAN
UNITED STATES ATTORNEY

*/s/ Cecelia Gregson*
CECELIA GREGSON
HELEN J. BRUNNER
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington  98101
Phone:  206-553-4325
E-mail:  cecelia.gregson@usdoj.gov

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## CERTIFICATE OF SERVICE

2

3    I hereby certify that on July 6, 2020, I electronically filed the foregoing with the

4  Clerk of Court using the CM/ECF system which will send notification of such filing to

5  the attorney of record for the defendant.

6

7                                            *s/ Kyle R. Martin*

8                                            KYLE R. MARTIN
                                             Legal Assistant
9                                            United States Attorney's Office
                                             700 Stewart, Suite 5220
10                                           Seattle, Washington 98101-1271
                                             Phone:  206-553-7970
11                                           E-mail: Kyle.Martin2@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Government's Response to Motion for Compassionate Release
*U.S. v. Thomas Mahoney,* CR18-090 JCC - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970